All right, Ms. Miller, you reserve two minutes for rebuttal, so that gives you eight minutes to start. You may begin. Thank you, Your Honors. May it please the Court. My name is Josephine Miller, and I am the appellant in this matter. This is a case about a 12-month suspension from practice of law in the state of Connecticut that ended up morphing into a 42-month long suspension. The central issue, I think, for this Court is who was responsible for that delay in reinstatement. The defendants have taken the position that it cannot be said who was personally involved. They point to a number of— Excuse me for interrupting, Ms. Miller, but we're on a motion to dismiss, right? Correct. So we're looking for whether you have possibly alleged enough facts to support your claims, right? That is correct. Okay. So we have a somewhat different procedural posture than who was responsible, right? Okay. Your Honors, it is our position that we have pled sufficient facts, as well as the inferences to be drawn from those facts, to say that there was personal involvement in the decision that resulted in the delay in reinstatement. Personal involvement by the Chief Court Administrator, Patrick Carroll. So what is the evidence with respect to Judge Carroll? It seems to me there's nothing in the complaint that even alleges he was a member of the standing committee or the courts that were responsible for readmission applications. That kind of jumps ahead to look at those individual actors who are the admitted arms of the judicial branch when it comes down to attorney discipline matters. We are looking here, though, specifically at the issue of the fact that the technology, the TEAMS technology that was being used by the state of Connecticut during the pandemic was withheld from me as a means to get into that very first level of the initial decision. Rep, what is there to indicate that that was a decision of Judge Carroll? All right. What is in the complaint alleges that? The complaint alleges, first of all, that he was the creator of a number of policies that relate to how the reinstatement and operation of the attorney discipline process, how it worked. We also pointed to specific statements coming from those who were at the lower levels who said they had no permission to use that technology. We had the judge's scheduling clerk for that particular judicial district who said that she had to get permission. We had Judge Sheridan, who was the presiding and administrative judge for the Hartford Judicial District, where my application for readmission was pending, saying that he didn't have permission. Therefore, logic and common sense would say that the only other person who could have been responsible for withholding permission for the use of what they called a non-judicial resource, and we're really talking about the technology, it could have only been the chief court administrator himself. It is highly implausible that some technology person, some person who handles the equipment himself was making that kind of decision. That permission logically had to come from no one other than the chief court administrator. We also presented evidence to the court. Although the court said that we needed empirical evidence, we don't believe that that is part of the standard, but we did present evidence to show that every- You're talking about what you pleaded in your complaint or something else? Well, some of it was pled in the complaint, but other information was in attachments and exhibits to a number of the pleadings in the cases. Specifically, we pointed out the fact that not a single other attorney who was facing some aspect of the discipline process, whether you're talking about presentment at the initial stages of discipline or if you were talking about someone who was seeking reinstatement as myself, no one else other than myself, Attorney Miller, was denied access to this technology so as to go forward with the process. We also presented evidence to the court coming from the judicial website that showed that over a seven-year period preceding my application for readmission, out of 27 attorneys who sought reinstatement, there were only two African Americans, myself and another black female who's actually my client, we were the only ones who had our applications for reinstatement stayed. Everyone else had their applications to go forward without any delay. These were facts that we say plausibly led to the conclusion that there was, first of all, a parent policy and practice of delaying or otherwise finding some reason for not going forward with the readmission of attorneys. But again, we're limited to the facts pleaded in the complaints, right? Well, I don't believe that that's correct. What's in the complaint as well as inferences that can be drawn, as well as the court taking judicial notice of pleadings in other matters, as well as matters such as what was on the court's website. It was clear from the court's own website, and admittedly, the chief court administrator is the top policymaker and the person who is in charge of ensuring the accuracy of that information, not a single other person was denied access to the initial stages of going forward with an application for reinstatement. Ms. Miller, could I ask one question, please? So the presentment action was brought in March 2017, as I understand it, and after your one year of suspension ended, you applied for reinstatement in December 2019. Correct. But it looked to me as though your application wasn't complete in terms of the conditions that have been imposed on you, for example, getting a mentor, until August of 2021. Do I have the correct timetable here? That is correct. However, it should be noted that the Statewide Grievance Committee, which is the part of the apparatus responsible for reporting on whether an individual has met those initial conditions, did file a motion to dismiss based on the issue of not having passed the MPRE. But by April of 2020, they had withdrawn that. Therefore, clearly they were of the mind that the application for reinstatement could go forward because that condition had been complied with. The MPRE. But what about the mentorship? Mentorship wasn't done until August of 2021, though, I think. Well, that is correct, but there was nothing in the intervening process that said that they considered that to be a failure of fulfillment of conditions to go forward. And in fact, we were able to point out that another attorney, a Caucasian male, had also not complied with other conditions. Even though he filed his application for reinstatement some seven months after me, he got a hearing scheduled even before mine. And moreover, was given access to this same technology apparatus before me. And so these were factors that were brought to the attention of the court, and she could make certain inferences from that, that there was something specific that was being applied to me that was not being applied to others. When I say that literally no other attorney had their applications, excuse me, their reinstatement process stayed or otherwise delayed except this attorney. Even lawyers who were deceased, there were at least 12 or so lawyers who were deceased, and yet they allowed those matters to go forward to hearings using this nonjudicial resource. But it comes down, I think, to this, the question of who was responsible. If the standing committee said they didn't have the right to grant permission to go forward using the apparatus, then we have to knock them out. The scheduling clerk said she didn't have the right. Judge Sheridan said he didn't have permission. Logically, who else was there that could have granted an earlier access to the technology but the defendant, Patrick Carroll? Now, as we were proceeding with the litigation, of course, discovery was staged. So there is an information asymmetry in terms of information I had versus what the defendants had. And so I had to piece together information. And that's why there were multiple instances of amending the complaint as I found out additional information and attempted to add that to the complaint. But the bottom line is that no one else except me was denied access to even get started with the process. All right, well you've gone well over, but you have two minutes of rebuttal. So we'll now hear from Ms. Gartz, am I pronouncing that right? Gates? I'm sorry, I misread it. Gates? Ms. Gate. Ms. Gates. Yes. Thank you. Okay, you may proceed. Good morning, your honors. May it please the court, Assistant Attorney General Emily Adams Gate on behalf of the Chief Court Administrator, Judge Carroll. The narrow issue before this court is whether plaintiff has asserted sufficient factual allegations to state a claim for money damages against Judge Carroll. The complaint could have achieved that standard in two different ways. First, by alleging that Judge Carroll adopted and implemented a policy for personally involved in discrimination with a discriminatory state of mind. The district court properly granted the motion to dismiss, because all of the allegations in the complaint fall into one of three categories. They're either conclusory allegations, they are allegations against individuals that are not defendants in this action. Or they are allegations that require too many inferences to support a plausible claim for discrimination in a policy or personal involvement. I'll briefly address two points that plaintiff raised. The first regarding the allegations about the email exchanges and the second about the comparators that she has alleged. The first, there are certainly plausible inferences that you can draw from the allegations in the complaint. And starting on page 69 of the joint appendix, you'll see that the allegations actually track the practice book provisions that lay out the process for the reinstatement proceeding and reinstatement application. In that, in paragraph 45, the plaintiff alleges that she communicated with attorneys Staines, Rowe, and Friedle, all of those individuals are the individuals that you would expect would be involved in the process at that time. The chief court administrator refers the application to a local standing committee, and then it's the standing committee that's in charge of proceeding on the application. And all of that is laid out in practice book section 2-53. The next allegation 47 regards, is dealing with the report. Let me interrupt for just a minute, if I may. So on the opening page of your brief, you criticize Ms. Miller for not suing the state actors who were actually involved in her reinstatement proceedings. And instead suing Judge Carroll, who as chief court administrator seems to have oversight responsibility generally. So certain people are named here in the complaint, in the paragraphs you were just reading. Are you suggesting that Ms. Carroll should have sued those people, or that more investigations should have been required? I mean, this was an extraordinarily long period of time in which Ms. Miller was deprived of her livelihood. And I'm really troubled, as Judge Underhill was, by this extended period. And part of it maybe was an incomplete application at the beginning, failure to satisfy certain conditions, but there was no notice that the mentorship was the pivotal point. The state points to, she points to much quicker proceedings in Fairfield as opposed to in Middlesex. But this is overall the state of Connecticut, of which I'm a resident, that is being very, very slow to act on a reinstatement petition. And I don't understand why a WebEx, a technological issue, should have delayed it so long. You seem to be suggesting that there were other people who maybe were the correct defendants here, and that she just didn't guess the right ones. But what is the state of Connecticut really saying about what an attorney should do in this context? And I realize we're in a motion to dismiss, and it's the plaintiff's burden to plead, and so on. But she doesn't get discovery, and she's kind of left out in the cold. So maybe you could just kind of give me a general answer, acknowledging how that's a bit more conversational than actually a legal question. Sure, and I think there are certainly, I understand the concern, and the stand understands the concern for the delay. And I'm happy to walk through the timeline that really demonstrates that in addition to the incomplete application, which accounts for the first four months of a delay, there were other factors that also contributed. So in particular, the COVID pandemic. And so in particular to plaintiff's application during the COVID pandemic, there are indications in the complaint that plaintiff herself was trying to do something that was a little bit different than perhaps other individuals attempting to get reinstated. So paragraphs 57 and 59 explicitly, well, you can draw a reasonable inference that plaintiff was seeking an in-person hearing. So, and- I'm sorry, what kind of hearing? I'm sorry? She was seeking a what kind of hearing? In person. In person. So paragraph 57, paragraph 59, where it says that I requested to help set up time in the courthouse. And then again, at the end of that paragraph, where they're not allowing matters to occur in person. So I think a reasonable inference could be drawn that perhaps plaintiff was also trying to do something a bit different that was outside of the normal sort of process during the COVID pandemic. And then I think it does matter that each individual standing committee was dealing with different challenges during the COVID pandemic. Hartford could have been facing different challenges than Fairfield. And that is also supported in the complaint where- Yeah, Fairfield went ahead and New Haven went ahead. There were a lot of hearings being held and people being reinstated. But ultimately, this is the responsibility of the state of Connecticut, isn't it? Correct. And there are allegations that plaintiff was trying to do something perhaps a little bit different and a little bit unique in having an in-person hearing and that the folks in charge of trying to make that happen were doing their best. There's- But didn't the state, there's no, I mean, I guess we're limited to the complaint here. But the exhibits that have been attached and the allegations made don't suggest that the state ever offered to have a virtual hearing until late. Well, in paragraph 57, subsection 2, it says the request of the committee to conduct a virtual hearing subject to you being comfortable with that. So I think that suggests that the- It just says it has been forwarded to the appropriate department which funds such requests. The funding department has not approved our request. Even if the request is approved, it would not appear we would be able to conduct a hearing until the very least February 2021. I'll let you know when I have more information. So that suggested that was live, but it was not happening fast. That was from November to February 2021. And I think what also sort of counsels in the state's favor is that there were responses. The email exchanges demonstrate that the state was attempting to make efforts to make the process happen in the way in which the plaintiff was asking for. And it was trying to accommodate, to the extent that it could, what plaintiff was asking for. And that all of that is to say that the state was making efforts and Judge Carroll and Judge Sheridan were not involved in that process. And I do understand the concern that there certainly is an interest in plaintiff's behalf of having this application process proceed. But back to the timeline of what happened to intervene. Another point to you in your brief, you say rather than suing the state actors who were actually involved in her proceedings, she brought this action. So there are actors who she should have sued instead is what you're saying. Potentially. But that's not to say that certainly there is. I think the only thing that we can reasonably conclude from this complaint is that it was not Judge Carroll. He didn't have any personal involvement. And perhaps if there were some delay that there may have been folks responsible. But it is, the complaint does not sufficiently allege that it was Judge Carroll. And it certainly suggests a plausible inference that the state was attempting to satisfy the plaintiff's request and move it along as quickly as it could under the circumstances of the COVID pandemic. I'm sorry to draw you far off the complaint, but I did want to express my concern as a member of the Connecticut Bar. I do understand the concern, and thank you for allowing me the opportunity to address it. The other point that plaintiff raised that I wanted to address was the comparators. And that for a comparator, there needed to be explicit, similarly situated in all material respects. And again, the complaint simply just doesn't reach that level. It was different judicial districts, it was in the middle of the COVID pandemic. And there's a difference between the initial hearing that plaintiff was attempting to have executed and the three judge panel hearings. There are no comparators that are similarly situated in all material respects to plaintiff. If there are no further questions, we'll rest on our feet. Thank you. Okay, thank you. Ms. Miller, you have two minutes for rebuttal. Thank you, Your Honor. Simply put, the COVID-19 pandemic was simply used as a pretext by the defendant in order to facilitate their delay. Because even though we had the pandemic in play and some cessation of certain kinds of hearings before the court, we're talking about the issue of the technology. There is nothing whatsoever to counsel's claim that I was seeking an in-person hearing. I simply sought to have that initial hearing by whatever means were available. That is what was denied to me. On the issue of comparators, I think the court should note that it's not a question of whether someone was at the initial stages of discipline versus being reinstated. Because it's not the content of what kind of hearing would be held, but even the access to go forward. That's why it is my position that the record shows that everyone who was seeking some redress in terms of discipline, whether at the front end or at the tail end, had to utilize this process and everyone else got it except me. The court should look at the fact that the application of the attorney discipline rules and processes required that everybody use the technology, the remote system. That's what's relevant in terms of deciding who is a comparator. Not whether someone was seeking reinstatement versus they're being disciplined on the front end. And I would just like to reiterate what your honor has said about the decision of Judge Underhill. I had to literally file in federal court to get some kind of recess and redress. And Judge Underhood accepted that there was something amiss about a 12 month suspension, purported 12 month suspension, that even after that 12 months was up, another two and a half years elapsed before I even got to the initial stage. And all that we presented to the court by the evidence that was available to us, limited though it was. The pleadings in the complaint, the fact that the chief court administrator kept a very tight rein on everything that happened within the judicial branch. So it's not hard to imagine that he was the person that was putting the brakes on my utilization of the technology in order to go forward with the hearing. And Judge Underhill said in his decision that these delays had reached a point where some corrective action needed to be taken. Even after he made that decision, the state of Connecticut then still took another year before they reinstated me on the state side. Judge Underhill called that having me in a state of limbo. That is something that you will not see in any of the records anywhere happening to any other lawyer. And to the extent that we did talk about the policy, the procedures that were put in place by the chief court administrator. It is clear that he knew with a great deal of certainty and clarity and tightness what was going on at the lower levels. We are not relying on the actions of lower level individuals. And to your point, your honor, I could not have brought an action against any of these lower level state personnel because I would have been faced with a claim of immunity. And only because I was able to bring this action against Judge Carroll in his capacity as an administrator. If I had sought to question decision making about the substance, it would have all failed. But because his role as an administrator, he does not have that kind of immunity. And as the evidence actually showed, it could have been nobody else but him making this decision. One that affected me for 42 months of my legal practice. I've been practicing for 43 years, and 42 months I was deprived of, because of the personal decision making, the personal action. It has to be either Judge Carroll or Judge Sheridan, and that's why I sought to bring Judge Sheridan in. Because if it's not one, it's the other. But it was their personal involvement in not granting the permission, which is the grabberman of the offense here. Thank you, your honor. All right, thank you both. We will reserve decision. That concludes the argument calendar. We have two other cases on submission. We'll reserve on those as well. And with that, let me thank our courtroom deputy and ask her to adjourn the court. Court stands adjourned.